AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | | |
|---|---|---|
| United States of America<br>v. | ) ) ) ) ) ) | Case No. **1:26-mj-00167** |
| FRANEEK COBB | | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ March 1, 2026 _____ in the county of _____ Hamilton _____ in the

_____ Southern _____ District of _____ Ohio _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of Firearm & Ammunition |

This criminal complaint is based on these facts:

See attached Affidavit in Support of a Criminal Complaint.

☑ Continued on the attached sheet.

*Jason Wharton*
_____
*Complainant's signature*

Jason Wharton, Task Force Officer, ATF
*Printed name and title*

Attested to by the applicant by reliable electronic means, specifically, FaceTime video conference, in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date:  03/03/2026

*Stephanie K Bowman*
_____
*Judge's signature*

City and state:  _____ Cincinnati, Ohio _____

Stephanie K. Bowman, United State Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, Jason Wharton, being duly sworn, hereby depose and state as follows:

1.      I make this affidavit in support of a criminal complaint pursuant to Rule 4 of the Federal Rules of Criminal Procedure, charging DERRICK LONG and FRANEEK COBB with violations of 18 U.S.C. § 922(g)(1), Possession of Ammunition by a Prohibited Person.

2.      I am a Task Force Officer with the Bureau Alcohol, Tobacco, Firearm, and Explosive (ATF), and Explosives, and have been so employed since 2010.  I have been a police officer with the Cincinnati Police Department for more than 24 years. During my law enforcement career, I have conducted and participated in numerous investigations involving firearms offenses and narcotics trafficking. These investigations have resulted in the seizure of firearms and controlled substances, the seizure of proceeds in the form of United States currency, and the arrest, prosecution, and conviction of individuals for federal and state offenses. I have participated in numerous interviews with individuals involved in the unlawful possession and use of firearms and have reviewed investigative reports prepared by other law enforcement officers and agencies. I am trained in the use of the National Integrated Ballistic Information Network (NIBIN), which assists law enforcement in identifying firearms used in crimes, and in the collection of deoxyribonucleic acid (DNA) from firearms and individuals. I have instructed law enforcement personnel at the Cincinnati Police Academy regarding NIBIN, DNA collection from firearms, and the entry of cartridge casings into the NIBIN system

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is

intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## **PROBABLE CAUSE**

4.      On or about March 1, 2026, Cincinnati Police Department (CPD) officers responded to 4343 Kellogg Avenue, Cincinnati, Ohio for a report of a shooting inside the Riverfront Live night club and event venue. 4343 Kellogg Avenue, Cincinnati, Ohio is located in the Southern District of Ohio.

5.      CPD homicide detectives conducted the investigation of the shooting. I learned that homicide detectives identified the two shooters as DERRICK LONG and FRANEEK COBB based on their review of surveillance footage from Riverfront Live. I learned that detectives were familiar with LONG and COBB from prior police contact. I also learned that detectives have reviewed a copy of all the identified cards that were scanned at Riverfront Live that night (and early morning hours of March 1, 2026), and that COBB had used his state identification card to enter the Riverfront Live venue. LONG was further identified as a person in the hospital after the shooting and through video surveillance.

6.      The investigation, which included review of surveillance video, from inside Riverfront Live, showed that the following events occurred:

   a.  Immediately before the shooting, COBB observed LONG in COBB's immediate vicinity.

   b.  Upon observing LONG, COBB pulled out a firearm and began firing shots towards LONG, which caused patrons to seek cover.

   c.  LONG fell to the ground, at which time he brandished a firearm and began firing multiple gunshots in the direction of COBB.

d. As COBB fled the establishment, he collided with the bar with sufficient force that a firearm fell from his hand. The firearm, which was later recovered and identified as a Taurus 9mm handgun, slid out of COBB's hand, onto the bar, and then onto the floor.

e. COBB was last observed fleeing the scene within a crowd of patrons exiting the establishment.

f. LONG was last seen running in the crowd away from COBB's direction with a firearm in his hand.

7. During the initial crime scene processing, law enforcement recovered the 9mm Taurus firearm that slid out of COBB's hand, which was identified as a Taurus, model 709 slim, 9mm handgun bearing serial number JW92358; it was recovered from the area where COBB dropped the gun. Law enforcement also recovered four 9mm cartridge casings in the area where COBB was standing when he fired at LONG. In addition, law enforcement recovered eight .45 caliber cartridge casings in the area where LONG was on the ground and firing his gun in COBB's direction.[1] The evidence was submitted to the CPD Criminal Investigation Section for processing and forensic analysis.

8. On March 1, 2026, the CPD NIBIN room received the 12 cartridge casings (four 9mm and eight .45 caliber) recovered from inside Riverfront Live.[2] Law enforcement uses

---

[1] In surveillance video, shell casings from LONG's firearm can be seen discharging from LONG's gun and falling on to LONG's person and in his immediate vicinity.

[2] NIBIN, which is short for National Integrated Ballistic Information Network, is a nationwide data network administered by the Bureau of Alcohol Tobacco and Firearms ATF that is comprised of 3-dimensional microscopic images of shell casings collected from crime scenes and test fire cartridges generated from recovered crime guns by law enforcement agencies across the country.  These crime scene and test fire cartridges are collected, imaged, and submitted by the respective agencies for comparison to existing submissions contained within NIBIN.  NIBIN correlates these submissions into likely matches that are subsequently verified by a NIBIN examiner, and subsequently subjected to a peer-review process, that determines multiple shell casings were generated by the same firearm which resulted in unique tooling marks

3

NIBIN as a search tool to find multiple cartridge casings or bullets that likely were fired from the same firearm. A trained correlation review technician visually examines, side-by-side on-screen, potentially matching images returned by a NIBIN search. If the technician determines a likely match between the test-fired or recovered cartridge case and another entry in the NIBIN database, at least one trained peer reviewer confirms that determination. This whole process is conducted pursuant to Minimum Required Operating Standards mandated and enforced by ATF and a national NIBIN governing board. Here, the correlation review technician and peer reviewer(s) determined and confirmed, based on digital images, that the four 9mm cartridge casings (recovered from the area where COBB was shooting at LONG) were all likely fired by the Taurus model 709 slim, 9mm handgun bearing serial number JW92358 (recovered from the area where COBB is seen on video dropping the gun). Further, the correlation review technician determined that the eight .45 caliber cartridge casings recovered from the area where LONG was firing were all likely fired by the same .45 caliber gun. At this stage, a firearm examiner has not performed a microscopic comparison of the actual cartridge cases to reach a final conclusion that they match.

9.      Based on my training and experience, my participation in this investigation, review of information provided by other law enforcement officers, and my conversations with other law enforcement officers, I believe that that on March 1, 2026, COBB knowingly possessed the Taurus firearm described above and 9mm ammunition fired by the Taurus firearm that was recovered at Riverfront Live. My belief is based on the fact that COBB was identified by detectives as the person on surveillance video who used a firearm to shoot LONG; the fact that COBB is seen on surveillance video brandishing and discharging a firearm at LONG; the fact

---

and characteristics being transferred from the firearm to each shell casing.  This information results in the publishment of an investigative lead showing commonalities between each crime event.

4

that COBB is seen on surveillance video dropping the Taurus firearm; the fact that the Taurus firearm was recovered in the area where COBB dropped it; and the fact that NIBIN examination determined that the 9mm cartridge casings recovered from the area where COBB was shooting were likely fired from Taurus firearm COBB dropped.

10. Based on my training and experience, my participation in this investigation, my review of information provided by other law enforcement officers, and my conversations with other law enforcement officers, I believe that on March 1, 2026, LONG knowingly possessed .45 caliber ammunition inside Riverfront Live. My belief is based on the fact that LONG was identified by detectives as the person on surveillance video who fired shots in COBB's direction; the fact that LONG is seen on surveillance video discharging a firearm; the fact that surveillance video shows the cartridge casings from LONG's firearm falling on and around his person; the fact that the .45 caliber cartridge casings were recovered from the area where LONG was seen on video shooting; and the fact that video surveillance and NIBIN examination showed that likely only two firearms were discharged during the Riverfront Live shooting, which is consistent with the recovery of only 9mm and .45 caliber cartridge casings.

11. I reviewed copies of convictions records for COBB and LONG, and determined that, before March 1, 2026, both COBB and LONG had been convicted of crimes punishable by a term of imprisonment exceeding one year.

    a. COBB: On June 23, 2022, in Hamilton County, Ohio Court of Common Pleas Case Number B220296, COBB was convicted of Having Weapons While Under Disability, a third-degree felony. Having Weapons While Under Disability (F3) is a crime punishable by a term of imprisonment exceeding one year. For this conviction, COBB was sentenced to a term of imprisonment of 18 months, and

therefore, before March 1, 2026, he knew that he had been convicted of a crime punishable by a term of imprisonment exceeding one year.

b. <u>LONG</u>: On April 24, 2023, in Hamilton County, Ohio Court of Common Pleas Case Number B2203869, LONG was convicted of Arson, a fourth-degree felony, and Receiving Stolen Property, a fourth-degree felony. Arson (F4) and Receiving Stolen Property (F4) are each crimes punishable by a term of imprisonment exceeding one year. LONG was sentenced to 12 months' imprisonment. I also reviewed LONG's guilty plea form in Case Number B2203869. The guilty plea form states that Arson (F4) and Receiving Stolen Property (F4) were each punishable by a term of imprisonment of up to 18 months; LONG signed the guilty plea form and affirmed in the document that he understood the maximum penalties set forth for each offense. Therefore, I believe that, prior to March 1, 2026, LONG knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year.

12. On March 2, 2026, an ATF Interstate Nexus expert examined the Taurus, model 709 Slim, 9mm pistol bearing serial number TJW92358, and photographs of the recovered 9mm and .45 caliber cartridge casings. He determined, based on his training, experience, and qualifications, the following:

a. The Taurus, model 709 Slim, 9mm pistol bearing serial number TJW92358 is a weapon designed to expel a projectile by the action of an explosion, and is therefore, a firearm under federal law. Further, the Taurus, model 709 Slim, 9mm pistol bearing serial number TJW92358 was manufactured in Brazil, and therefore, traveled in interstate commerce prior to its recovery in Ohio on March 1, 2026.

b.  One 9mm cartridge casing recovered inside Riverfront Live bearing the headstamp "WIN 9MM LUGER" was, before it was discharged from the Taurus firearm, ammunition under federal law, and was manufactured in Mississippi. Therefore, the Interstate Nexus expert concluded that the 9mm ammunition bearing headstamp "WIN 9MM LUGER" traveled in interstate commerce before it was recovered in Ohio on March 1, 2026.

c.  The .45 caliber cartridge casing recovered inside Riverfront Live bearing the headstamp "BLAZER 45 AUTO" was, before it was discharged from the unrecovered firearm, ammunition under federal law, and was manufactured in Idaho. Therefore, the Interstate Nexus expert concluded that the .45 caliber ammunition bearing headstamp "BLAZER 45 AUTO" traveled in interstate commerce before it was recovered in Ohio on March 1, 2026.

## CONCLUSION

13.  For the reasons stated above, I submit that there is probable cause to believe that on March 1, 2026, in the Southern District of Ohio, FRANEEK COBB violated 18 U.S.C. § 922(g)(1), Possession of a Firearm and Ammunition by a Prohibited Person.

14.  For the reasons stated above, I submit that there is probable cause to believe that on March 1, 2026, in the Southern District of Ohio, DERRICK LONG violated 18 U.S.C. § 922(g)(1), Possession of Ammunition by a Prohibited Person.

I declare under penalty and perjury that the foregoing is true and correct to the best of my knowledge.


*Jason Wharton*
_____
Jason Wharton
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms, and Explosives


Sworn and subscribed to before me by reliable electronic means, specifically, FaceTime video conference, in accordance with the requirements of Fed. R. Crim. P. 4.1, on March  3   , 2026.

*Stephanie K Bowman*
_____
HON. STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

8